Paul Arons, State Bar #84970
LAW OFFICE OF PAUL ARONS
685 Spring Street, #104
Friday Harbor, WA 98250
Tel:  (360) 378-6496
Fax: (360) 37806498
lopa@rockisland.com

Ronald Wilcox, State Bar #176601
LAW OFFICE OF RONALD WILCOX
2160 The Alameda, 1st Flr., Suite F
San Jose, CA 95126
Tel:  (408) 296-0400
Fax: (408) 296-0486

O. Randolph Bragg, IL. Bar #06221983
HORWITZ, HORWITZ & ASSOCIATES
25 East Washington, Suite 900
Chicago, IL 60602
(312) 372-8822

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| SUSANNE PALMER, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>FAR WEST COLLECTION SERVICES, et al.,<br><br>Defendants. | CIV. NO.  C04-03237 RMW<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL FURTHER DISCOVERY**<br><br>Date: May 24, 2005<br>Time 10:00 a.m.<br>Courtroom 5 |

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................. 1

II.   THE SCOPE OF THE LAWSUIT INCLUDES SEVERAL COLLECTION
      PRACTICES COMMENCING FOUR YEARS PRIOR TO JULY 27, 2004,
      THE DATE THE COMPLAINT WAS FILED, AND CONTINUING TO THE
      PRESENT ................................................................... 1

III.  SINCE THIS IS AN UNFAIR BUSINESS PRACTICE CASE, AS WELL
      AS A CLASS ACTION, DEFENDANT'S FORM LETTERS AND OTHER
      STANDARD COLLECTION PRACTICES ARE IN ISSUE, EVEN PRIOR
      TO A CLASS BEING CERTIFIED ................................... 3

IV.   PLAINTIFF IS ENTITLED TO DISCOVER THE IDENTITY OF OTHER
      PUTATIVE CLASS MEMBERS ...................................... 4

V.    THE COURT'S DECEMBER 14, 2005 ORDER DOES NOT
      MATERIALLY LIMIT THE SCOPE OF DISCOVERY ................... 4

VI.   DEFENDANT'S NON-SPECIFIC BLANKET OBJECTIONS ARE
      INEFFECTIVE AND SHOULD BE DISREGARDED...................... 5

VII.  DEFENDANT'S FAILURE TO PRODUCE A PRIVILEGE LOG WAIVES
      ANY CLAIMS OF PRIVILEGE......................................... 6

VIII. INTERROGATORIES ................................................... 7

A.    Defendant's Boilerplate Prefatory Statement is Ineffective to Preserve
      Any Objection and Makes Defendant's Answers Ambiguous........................ 7

IX.   REQUESTS FOR PRODUCTION OF DOCUMENTS .................. 14

X.    CONCLUSION ............................................................. 20

# TABLE OF AUTHORITES

**Cases**

*Baker v. G. C. Services Corp.*,
677 F.2d 775 (9th Cir. 1982) ................................................................. 12

*Ballard v. Equifax Check Services, Inc.*,
186 F.R.D. 589 (E.D. Cal. 1999)............................................................ 3

*Cisneros v. The U.D. Registry, Inc.*,
39 Cal.App.4th 548 (1995)..................................................................... 3

*Clarke v. American Commerce Nat'l Bank*,
974 F.2d 127 (9th Cir. 1992)............................................................. 6, 7

*Davis v. Fendler*,
650 F.3d 1154 (9th Cir. 1981) .............................................................. 7

*Eureka Financial Corp. v. Hartford Acci. & Indem. Co.*,
136 F.R.D. 179 (E.D. Cal. 1991) ........................................................... 6

*Griggs v. Pace American Group, Inc.*,
170 F.3d 877 (9th Cir. 1999)................................................................. 4

*Garrett v. City & County of San Francisco*,
818 F.2d 1515 (9th Cir. 1987) .............................................................. 9

*Graziano v. Harrison*,
950 F.2d 107 (3rd Cir. 1991) ................................................................ 9

*Grill v. Costco Wholesale Corp.*,
2004 U.S. Dist. LEXIS 21400 (W.D.WA 2004) ................................... 6

*Grinzi v. Barnes*,
2004 U.S. Dist. LEXIS 20979 (N.D. Cal. 2004)................................... 9

*In re Air Crash at Taipei*,
211 F.R.D. 374 (C.D. Cal. 2002)............................................................ 7

*Irwin v. Mascott*,
112 F. Supp. 2d 937 (N.D. Cal. 2000) ................................................ 12

*Joseph v. Harris Corp.*,
677 F.2d 985 (3rd Cir. 1982) ................................................................ 6

*Kimbro v. I.C. Sys.*,
2002 U.S. Dist. LEXIS 14599 (D. Conn. 2000) ....................................... 13

*Knoll v. AT&T*
176 F.3d 359 (6th Cir. 1999) ..................................................................... 9

*Lucas v. GC Services, L.P.*,
226 F.R.D. 328 (N.D. Ind. 2004) ...................................................... 10, 17

*M2 Software, Inc. v. M2 Communications*, L.L.C.,
217 F.R.D. 499 (C.D. Cal 2003) ................................................................ 7

*Meese v. Eaton Mfg. Co.*,
35 F.R.D. 162 (N.D. Ohio 1964) ................................................................ 6

*Palmer v. Far West Collection Services, Inc.*,
348 F. Supp. 2d 1070 (N.D.Cal. 12/14/2004) ....................................... 2, 4

*People v. Casa Blanca Convalescent Homes, Inc.*,
159 Cal.App.3d 509 (1984) ........................................................................ 3

*Sanders v. Jackson*,
209 F.3d 998 (8th Cir. 2000) .................................................................... 10

*Scott v. Universal Fidelity Corp.*,
42 F. Supp. 2d 837 (N.D. Il. 1999) .......................................................... 10

*Soto v. City of Concord*,
162 F.R.D. 603 (N.D. Cal. 1995) ................................................................ 9

*Walker v. Lakewood Condo. Owners Ass'n*,
186 F.R.D. 584 (C.D. Cal. 1999) ................................................................ 6

*Wisneski v. Nationwide Collections, Inc.*,
2004 U.S. Dist. LEXIS 15715 (E.D. PA. 2004) ...................................... 10

*Yancey v. Hooten*,
180 F.R.D. 203 (D. Conn. 1998) .............................................................. 15

**Statutes and Treatises**

15 U.S.C § 1692e(5) ........................................................................... 12, 15

15 U.S.C. 1692k(a) .................................................................................... 17

15 U.S.C. 1692k(b)(2)(c) ............................................................................. 13

15 U.S.C. § 1692k(d) ................................................................................. 2

Fed.R.Civ.P. 23(a) ............................................................................. 3, 8

Fed.R.Civ.P 23(b)(2)............................................................................. 8

Fed.R.Civ.P 23(b)(3)............................................................................. 8

Fed.R.Civ.P. 26(b)(5)......................................................................... 6, 7

Fed.R.Civ.P. 33(b)(4) ............................................................................. 6

Fed.R.Civ.P. 34(b) ................................................................................. 6

Cal. Bus. & Prof. Code § 17208............................................................. 2

Newberg and Conte,
Newberg on Class Actions, 4th Ed., ...................................................... 4

Schwarzer, Tashima & Wagstaffe,
Federal Civil Procedure Before Trial, (2004) ......................................... 8

# I.  INTRODUCTION

In this class action lawsuit plaintiff is challenging the collection practices of defendant Far West Collection Service, Inc. [Far West].  Far West runs a volume collection business in Concord, California.  On December 10, 2004, plaintiff Susanne Palmer served written interrogatories and a request for production of documents.  On February 16, 2005, defendant served responses.[1]  After defendant served responses, plaintiff noticed defendant's deposition.  The deposition was taken off calendar at the defendant's request.  The parties have engaged in settlement discussions, which have yet to resolve the matter.  When it became apparent that settlement was not imminent, the parties met and conferred in an attempt to resolve discovery issues.[2]  This motion addresses the unsettled issues.

Defendant's discovery responses include a litany of non-specific boilerplate objections.  Defendant provided documents in response to only two of ten document production requests.  It refused to answer half of the interrogatories, and most of the answers that it gave were brief and ambiguous.  In this memorandum, plaintiff will first discuss issues common to many of the discovery responses.  Plaintiff will then go through the specific discovery put at issue by this motion.

# II.  THE SCOPE OF THE LAWSUIT INCLUDES SEVERAL COLLECTION PRACTICES COMMENCING FOUR YEARS PRIOR TO JULY 27, 2004, THE DATE THE COMPLAINT WAS FILED, AND CONTINUING TO THE PRESENT

Defendant Far West collects on dishonored checks, typically demanding and collecting the face amount of the check, interest, and a return check charge.  Far West threatens litigation in the event the consumer does not make immediate payment.

Plaintiff Susanne Palmer filed this lawsuit on July 27, 2004.  In her First Amended Complaint, filed February 4, 2005,  Ms. Palmer alleges that defendant Far

---

1. "Defendant Far West Collection Service's Responses to Plaintiff's First Discovery Request., Exhibit 1 to Declaration of Ronald Wilcox in Support of Plaintiff's Motion to Compel Further Discovery.
2.  *See* April 4, 2005 letter from Ronald Wilcox to Andrew Steinheimer, Exhibit 2 to Declaration of Ronald Wilcox in Support of Plaintiff's Motion to Compel Further Discovery.

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL FURTHER DISCOVERY: Page 1

West is violating the Fair Debt Collections Practices Act, 15 U.S.C. §§ 1692, et seq., [FDCPA], California's Fair Debt Collection Practices Act [CA FDCPA], Cal. Civil Code 1788 and the California Unfair Competition Law, Cal. Bus & Prof. Code §§ 17200, et seq. [UCL], because it is collecting more money than is owed, in violation of federal and state law, and falsely threatening litigation that it does not intend to file.  The FDCPA has a one-year statute of limitations.  15 U.S.C. § 1692k(d).  The UCL has a four-year statute of limitations. Cal. Bus. & Prof. Code § 17208.  The two classes are defined in the Complaint as:

> All persons who were sent at an address in California a letter from defendant similar to Exhibits A or B regarding a dishonored check which, according to the records of the defendant or its subscriber, was written for personal, family, or household purposes.  The FDCPA class includes the one (1) year period prior to the filing of the complaint.  The CUBPA class includes the four (4) year period prior to the filing of the complaint.  The CA FDCPA class includes the one (1) year period prior to the filing of the Complaint.  Amended Complaint, ¶ 19.

In *Palmer v. Far West Collection Services, Inc.*, 348 F. Supp. 2d 1070 (N.D.Cal. 12/14/2004) the Court has ruled that Far West may not seek interest on dishonored checks and that its collection letters threaten litigation.  *Id.*, pp. 1083, 1085.  There are no other rulings on the merits.  Plaintiff has not yet filed a motion for class certification, but scheduling of that motion is one of the issues that the Court intends to discuss at the next Case Management Conference, currently set for April 29, 2005.  In sum, this is a class action that includes claims going back four years from the date of filing, to July 27, 2000.  The collection practices in issue include demanding and collecting more money than is owed, and sending communications in which defendant makes false threats of imminent suit.

1

2

3

**III.  SINCE THIS IS AN UNFAIR BUSINESS PRACTICE CASE, AS WELL AS A CLASS ACTION, DEFENDANT'S FORM LETTERS AND OTHER STANDARD COLLECTION PRACTICES ARE IN ISSUE, EVEN PRIOR TO A CLASS BEING CERTIFIED**

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

This action is a federal class action pursuant to the FDCPA, combined with an unlawful business practices action filed under California law.  In order to have a class certified, named plaintiff will have to show that defendant has treated them in the same way that it has treated putative class members.  In order to establish defendant's business practices for the state law claim, plaintiff must show defendant's pattern of business behavior. *People v. Casa Blanca Convalescent Homes, Inc.*, 159 Cal.App.3d 509, 527 (1984).  The fact that the defendant uses standard computer-generated form letters and follows standard procedures in seeking to collect from putative class members is relevant to establishing his business practices and to certifying a class.  Fed.R.Civ.P. 23(a); *See e.g., Ballard v. Equifax Check Services, Inc.*, 186 F.R.D. 589, 594-595 (E.D. Cal. 1999).  Defendant appears to operate a computer-driven volume check collection business, using standardized collection procedures.  If defendant is like other volume debt collectors, defendant has a series of computer-generated form letters that are sent to check writers whose checks have not cleared.  Far West has probably sent these letters to tens of thousands of people.[3]  To maintain a class and to establish defendant's business practices, plaintiff will have to provide evidence of defendant's standardized collection forms and procedures.  In connection with the UCL claim, plaintiff is entitled to introduce evidence of not only practices that affect her individually, but also similar practices involving other members of the public.  *Cisneros v. The U.D. Registry, Inc.,* 39 Cal.App.4th 548, 564 (1995).

22

23

24

_____

3.  Defendant admits that the each of the collection letters sent to Ms. Palmer was also sent to at least 1,000 people in California between July 27, 2003 and February 16, 2005.  Response to Request for Admissions, Nos. 2 and 4, <u>Exhibit 1</u> to Declaration of Ronald Wilcox in Support of Plaintiff's Motion to Compel Further Discovery.

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL FURTHER DISCOVERY: Page 3**

**IV.  PLAINTIFF IS ENTITLED TO DISCOVER THE IDENTITY OF OTHER PUTATIVE CLASS MEMBERS**

Although named plaintiff believes that she has standing to represent the entire class on all claims, the Court has ruled that since she did not herself pay any unlawful charges, she does not have standing to represent a class seeking restitution under the UCL.  *Palmer v. Far West Collection Services, Inc.*, *supra,* 348 F.Supp.2d at 1089.[4]  Plaintiff therefore has the right to seek additional representative plaintiffs who have paid unlawful interest charges and who therefore will have standing to represent class members seeking restitution.  *Griggs v. Pace American Group, Inc.*, 170 F.3d 877, 881 (9th Cir. 1999) [district court should allow amendment of complaint to substitute additional representative plaintiffs where there are questions concerning the standing of the original representative plaintiff.]  Having multiple class representatives also avoids a variety of potential problems, such as the death or disability of the named plaintiff or unique facts pertaining to the standing or adequacy of a particular plaintiff.  *See* Newberg and Conte, <u>Newberg on Class Actions</u>, 4th Ed., § 6:3, n. 43.

**V.  THE COURT'S DECEMBER 14, 2005 ORDER DOES NOT MATERIALLY LIMIT THE SCOPE OF DISCOVERY**

Defendant previously moved to dismiss plaintiff's claims pursuant to Fed.R.Civ.P. 12(b)(6) on the grounds that defendant was allowed to collect the additional charges that he assessed, and that the plaintiff did not have standing to assert a state unfair business practice claim.  The Court ruled that defendant's interest charges on unpaid checks were unlawful.  The Court ruled that the plaintiff has standing to seek injunctive relief, pursuant to the state unfair business practice claim, but they did not have standing to seek restitution or disgorgement.  *Palmer v. Far West Collection Services, Inc.*, *supra*.  Plaintiff has successfully moved the Court to reconsider that part of the ruling finding that they do not have standing to seek monetary relief.  That motion is now pending.

---

4.  The Court has granted plaintiff's motion for reconsideration on this issue, but has not yet ruled.

The Court's ruling does nothing to limit *the federal claim*. Additionally, plaintiff is entitled to proceed on the state claim for injunctive relief. At the very least, under the current law of the case, plaintiff may seek monetary relief for the class going back one year prior to the filing of the Complaint, rather than the full four years allowed under the state law claim. As seen below, however, defendant is objecting to providing discovery on far more than just the amounts of money defendant collected during the three-year period that is only covered by the state claim.

## VI. DEFENDANT'S NON-SPECIFIC BLANKET OBJECTIONS ARE INEFFECTIVE AND SHOULD BE DISREGARDED

Defendant objected to every document production request and half of the interrogatories. The response to Request for Production No. 5 is typical:

> Defendant objects to this request on the grounds that it calls for information that is irrelevant and not reasonably calculated to lead to admissible evidence. As such it is overbroad and unduly burdensome and harassing. Defendant objects on the grounds that this request calls for disclosure of attorney client privilege[sic] and attorney work product. Further, this request is not narrowly tailored as required by the Court's case management order concerning discovery. No documents will be produced.

These objections do not apprise the propounding party, or the court, of the basis for the objection. These objections are just a smokescreen, thrown up to delay discovery, with the hope that if the propounding party moves to compel further discovery, there might be some way to construct an argument from this hodgepodge of objections. If that approach was effective to preserve an objection, the responding party might just as well say: "Objection on all the usual grounds" and save some paper and ink.

Of course, more is required. It is black letter law that failure to make a timely and specific objection to discovery waives any objection based on privilege. When discovery is withheld based on a claim of privilege:

> [T]he party shall make the claim expressly and shall describe the nature of the documents, communication, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will engage other parties to assess the applicability of the privilege or

1

protection."  Fed.R.Civ.P. 26(b)(5).

2

Blanket assertions of attorney-client privilege are generally disfavored.  *Grill*

3

*v. Costco Wholesale Corp.*, 2004 U.S. Dist. LEXIS 21400, *5 (W.D.WA 2004) *citing*,

4

*Clarke v. American Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992);  *Eureka*

5

*Financial Corp. v. Hartford Acci. & Indem. Co.*, 136 F.R.D. 179, 182 (E.D. Cal. 1991).  In

*Grill*, the plaintiff did not disclose notes she had made at the direction of her attorney.

6

The court held that she had waived any attorney-client or attorney-work product privilege

7

because, in part, she had only generally asserted privilege objections in her interrogatory

8

answers and did not specifically identify and object to disclosing the documents in

9

question.

10

An objection, whether based on grounds of privilege or otherwise, must be

11

stated with specificity.  Any ground not stated in a timely objection is waived, unless the

party's failure to object is excused by the court for good cause shown.  Fed.R.Civ.P.

12

33(b)(4), 34(b).  Boilerplate, generalized objections are inadequate and tantamount to not

13

making any objection at all.  *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584,

14

587 (C.D. Cal. 1999), *citing Joseph v. Harris Corp.*, 677 F.2d 985, 992 (3rd Cir. 1982)

15

("mere statement by a party that the interrogatory was 'overly broad, burdensome,

16

oppressive and irrelevant' is not adequate to voice a successful objection").  A party may

17

object to parts of an interrogatory or document production request, and answer the

unobjectionable portion.  However, asserting a broad general objection and then

18

providing an answer, waives the general objection.  *Meese v. Eaton Mfg. Co.*, 35 F.R.D.

19

162, 166 (N.D. Ohio 1964).

20

## VII.  DEFENDANT'S FAILURE TO PRODUCE A PRIVILEGE LOG WAIVES ANY
## CLAIMS OF PRIVILEGE

21

Defendant asserts a privilege or privacy claim as an objection to much of

22

the discovery.  Assuming, *arguendo,* that defendant had a legitimate privilege claim,

23

those privileges have been waived by defendant's failure to produce a privilege log.

24

Fed.R.Civ.P. 26(b)(5), *In re Air Crash at Taipei*, 211 F.R.D. 374, 376 (C.D. Cal. 2002),

citing *Clarke v. American Commerce Nat'l. Bank,* 974 F.2d 127, 129 (9th Cir. 1992);

*Davis v. Fendler*, 650 F.3d 1154, 1160 (9th Cir. 1981).

**VIII. INTERROGATORIES**

    **A. Defendant's Boilerplate Prefatory Statement is Ineffective to Preserve Any
Objection and Makes Defendant's Answers Ambiguous**

      Defendant's  discovery responses are prefaced by the following *caveat*:

> It should be noted that this responding party has not fully completed its
> investigation of the facts relating to this case, has not fully completed its
> discovery in this action, and has not completed its preparation for the trial.
> All the answers contained herein are based upon such information and
> documents which are presently available and specifically known to this
> responding party and disclose only those contentions which presently occur
> to such responding party. *It is anticipated that further discovery,*
> *independent investigation, legal research and analysis will supply additional*
> *facts, add meaning to the known facts, as well as establish entirely new*
> *factual conclusions and legal contentions, all of which may lead to*
> *substantial additions, changes in and variations from the contentions herein*
> *set forth.* The following interrogatory responses are given without prejudice
> to responding party's right to produce evidence of any subsequently
> discovered fact or facts which this responding party may later recall.
> Responding party accordingly reserves the right to change any and all
> answers herein as additional facts are ascertained, analyses are made,
> legal research is completed and contentions are made.
>
> The answers contained herein are made in a good faith effort to supply as
> much factual information and as much specification of legal contentions as
> is presently known but should in no way be in prejudice of responding party
> in relation to further discovery, research and analysis.  *Emphasis added.*

      This general boilerplate statement is ineffective as an objection because it

does not explain to what it is that defendant objects.  *See M2 Software, Inc. v. M2*

*Communications*, L.L.C., 217 F.R.D. 499, 501 (C.D. Cal 2003) and cases cited therein.

Additionally, in the highlighted portion of his statement defendant says that it has not yet

completed its investigation and that when it does, it *anticipates that all its discovery*

*responses will substantially change.*  Defendant has an obligation to take steps to obtain

information that is responsive to discovery.  *See* Schwarzer, Tashima & Wagstaffe,

1

Federal Civil Procedure Before Trial, § 11:1747 (2004).  In the present case, however,

2

defendant announces that it has not yet met this obligation, and when it does, it expects

3

significant changes in his discovery responses.  This "buyer beware" warning makes

4

every discovery response inherently ambiguous because defendant is stating that all the

5

discovery responses are tentative and preliminary and are likely to change.

6

**INTERROGATORY NO. 1**

State the name, address, phone number, account number, check date, check

7

amount, payee and total amount collected from each person with an address within
California who were sent the form represented by Exhibit A or B from Defendants

8

between July 27, 2000 to present.

9

**RESPONSE TO INTERROGATORY NO. 1**

Defendant objects to this interrogatory on the grounds that it calls for the

10

disclosure of personal and private information including financial information about
consumers in the state of California who are not parties to this action.  Disclosure of said

11

information violates the right to privacy found in the constitution of the state of California
and the United States as well as state and federal laws including the FDCPA.  Until an

12

actual class is certified, the identity of the alleged class members including their
addresses, telephone numbers and amount of debts owed to creditors is protected by the

13

individuals constitutional rights to privacy.  Further, defendant objects on the grounds that
this interrogatory calls for information outside the scope of this lawsuit and therefore it is

14

irrelevant and not likely to lead to admissible evidence.  Finally, defendant objects on the
grounds that it is overbroad and therefore unduly burdensome and harassing.

15

**PLAINTIFF'S DISCUSSION RE: INTERROGATORY NO. 1**

16

Defendant, like any debt collector running a volume collection business,

17

maintains computer files that include the information requested.  Plaintiff is currently

18

entitled to the identities and location information for putative class members because of

19

the need to locate additional class representatives.  They are entitled to discover which

20

form letters were sent, in order to establish that their claims are typical and raise common

questions of law and fact.  Fed.R.Civ.P. 23(a).  Plaintiff is entitled to establish that

21

defendant has acted on grounds generally applicable to the class, Fed.R.Civ.P 23(b)(2),

22

and that common questions of fact predominate over individual questions.  Fed.R.Civ.P

23

23(b)(3).  Plaintiff is entitled to payment information in order to calculate class damages

24

and establish the need for injunctive relief.

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL FURTHER DISCOVERY: Page 8**

1

2          Defendant's assertion of a constitutional privacy claim is specious.

3   Jurisdiction in this lawsuit is based on the existence of a federal question.  Therefore, any

4   privacy claim must be based on federal law.  *Grinzi v. Barnes*, 2004 U.S. Dist. LEXIS

5   20979 (N.D. Cal. 2004), *citing Garrett v. City & County of San Francisco*, 818 F.2d 1515,

6   1519, n. 6 (9th Cir. 1987).  In analyzing whether a claimed right of privacy should limit the

7   right to discover information relevant to the subject matter of the litigation, federal courts

8   engage in a balancing test.  *Soto v. City of Concord*, 162 F.R.D. 603, 619 (N.D. Cal.

9   1995).  Here, the claim is that check writers have a privacy interest in the fact that they

10  were pursued by a collection agency allegedly for unlawful collection charges in an

11  unlawful manner.  Most check writers would not object to disclosure of information for the

12  purpose of suing the collection agency by whom they were victimized.  In some cases

13  there might be, at most, slight personal embarrassment.  Balanced against this slight

14  privacy interest is the public interest in allowing litigants to conduct discovery.  Private

15  actions are the primary means of enforcement of the FDCPA.  *Graziano v. Harrison*, 950

16  F.2d 107, 113 (3rd Cir. 1991).  Therefore, there is an especially strong public interest in

17  allowing the discovery necessary to prosecute a lawsuit seeking to vindicate important

18  consumer rights on a class-wide basis.  Any minor privacy concern must give way to this

19  public interest.

20          Even if there is any legitimate right of privacy issue raised by the discovery

21  sought by plaintiff, the proper mechanism to protect a privacy interest is to obtain, either

22  by stipulation or by motion, a properly crafted protective order under Rule 26(c).  *See,*

23  *e.g., Knoll v. AT&T,* 176 F. 3d 359 (6th Cir. 1999), *Grinzi v. Barnes*, *supra*.  Defendants

24  have done neither.  Plaintiff has always been willing to enter into a stipulation for an

appropriate protective order, restricting dissemination of the identities of class members.

          Finally, defendant refuses to provide discovery because a class has not yet

been certified.  A litigant is entitled to conduct discovery on any issue relevant to the

subject matter of the litigation.  Defendant does not get to unilaterally determine the scope and timing of discovery.  There is no court order limiting the scope of discovery and defendant has not sought any order staying discovery on class matters.  Accordingly, the Court should reject defendant's objection that some discovery is not permitted until after a class is certified.  *See Lucas v. GC Services, L.P.*, 226 F.R.D. 328, 330-331 (N.D. Ind. 2004).

**INTERROGATORY NO. 3**

State the net worth of Defendant and how it is calculated.

**RESPONSE TO INTERROGATORY NO. 3**

Defendant's net worth is $93,545.  This was calculated by way of generally accepted accounting principles in accordance with *Sanders v. Jackson*, 209 F.3d 998 (8th Cir. 2000).

**PLAINTIFF'S DISCUSSION RE: INTERROGATORY NO. 3**

Defendant's explanation of the basis for its calculation reveals nothing. Discovery of net worth is appropriate in a FDCPA class action.  *Scott v. Universal Fidelity Corp.*, 42 F. Supp. 2d 837 (N.D. Il. 1999)(Motion to Compel granted.)  Net worth is the fair market value of a company.  In *Sanders v. Jackson, supra,* the court allowed defendant to rely on its "book value," the net value of its physical assets without regard to the real value of the company.  In response to an argument that only "book value" should be considered in assessing net worth, the court in *Wisneski v. Nationwide Collections, Inc.*, 2004 U.S. Dist. LEXIS 15715 (E.D. PA. 2004) stated that:

> I do not believe that Congress intended to allow a company to avoid a class action litigation arising under the FDCPA by presenting a balance sheet which shows that assets equal liabilities; such a demonstration is the nature of a balance sheet.  I would include equity, capital stock, and goodwill into the calculation of a company's net worth for these purposes. Under this analysis, Defendants balance sheet clearly indicates that they have net worth in the form of common stock and equity, as well as whatever good will Defendant has established as a company.

1

2

3

A number of factors may be considered in determining fair market value, including, but not limited to, physical assets, current and anticipated revenues, and profits.

4

**INTERROGATORY NO. 4**

5

State the amount of interest itemized for each class member recovered by Defendant through use of letters similar to <u>Exhibits A or B</u>.

6

**RESPONSE TO INTERROGATORY NO. 4**

7

8

9

10

11

12

13

14

Defendant objects to this request on the grounds that it calls for information about class members and no class has been determined.  Defendant objects to this interrogatory on the grounds that it calls for the disclosure of personal and private information including financial information about consumers in the state of California who are not parties to this action.  Disclosures of said information violates the right to privacy found in the constitution of the state of California and the United States as well as state and federal laws including the FDCPA.  Until an actual class is certified, the identity of the alleged class members including their addresses, telephone numbers and amount of debts owed to creditors is protected by the individuals constitutional rights to privacy.  Defendant further objects to the extent that it calls for information which is irrelevant and not likely to lead to the discovery of admissible evidence.  Relevant information as to interest collected is necessarily limited to the one-year period prior to plaintiff filing the complaint.  Subject to and without waiving the forgoing objections, defendant responds: The amount of interest paid on bounced checks from July 27, 2003 to the present is $4,941.00.

**PLAINTIFF'S DISCUSSION RE: INTERROGATORY NO. 4**

15

16

17

18

19

20

21

22

Far West reported sales of $2.8 million for the years 2002, and $2.8 million for the year 2003,[5] yet they claim that they only collected $4,941.00 in interest from July 27, 2003 to the present.  There is no way for plaintiff to confirm this figure absent, at a bare minimum, an itemization of the interest fees collected.  In an unsuccessful attempt to resolve this dispute plaintiff even suggested that this information could be provided with individual identities redacted.  Defendant rejected the suggestion.  As with Interrogatory No. 1, at most, a protective order restricting dissemination of the identities of class members is appropriate.

23

24

5. *See* Gale Group Company Brief for Far West Collection Services, Inc., <u>Exhibit 3</u> to Declaration of Ronald Wilcox in Support of Plaintiff's Motion to Compel Further Discovery.

**INTERROGATORY NO. 5**

State the number of lawsuits brought by Defendant in California to collect a debt relating to a dishonored check since July 27, 2000.

**RESPONSE TO INTERROGATORY NO. 5**

Defendant objects to this request on the grounds that it is overly broad and therefore unduly harassing and burdensome. Further, this request calls for information which is not relevant or reasonably calculated to lead to admissible evidence. This lawsuit is necessarily limited to the one-year period prior to plaintiff filing the complaint.

**PLAINTIFF'S DISCUSSION RE: INTERROGATORY NO. 5**

It is a violation of the FDCPA to make a false threat that a debtor will be sued if the debt collector's payment demands are not met. 15 U.S.C § 1692e(5), *Baker v. G. C. Services Corp.*, 677 F.2d 775, 779 (9th Cir. 1982), *Irwin v. Mascott*, 112 F. Supp. 2d 937, 952-953 (N.D. Cal. 2000). Judge Whyte has already ruled that the language used in defendant's letters constitutes a threat of suit. One of the ways that plaintiff can establish that Far West's threat to sue is false is by showing that it rarely, if ever, files collection lawsuits. In its response to plaintiff's Request for Admission No. 10, Far West admitted that it had initiated less than 10 lawsuits since July 27, 2003.[6] A search of the Lexis Public Records database does not show Far West as a plaintiff in any civil lawsuit in California since 1997.[7] During the meet and confer conversation defendant's counsel indicated he believed there were no suits in the one-year leading up to the filing of the complaint. There is nothing burdensome about the defendant responding to this question.

**INTERROGATORY NO. 6**

Describe all procedures maintained by Defendant to prevent the violations alleged in the Complaint.

**RESPONSE TO INTERROGATORY NO. 6**

This interrogatory is vague and ambiguous as to the term "to prevent the violations alleged in the Complaint." Further, the interrogatory is overly broad so as to be unduly

---

6. Response to Request for Admission No. 6, <u>Exhibit 1</u> to Declaration of Ronald Wilcox in Support of Plaintiff's Motion to Compel Further Discovery.

7. *See* Lexis printout of civil cases involving Far West, <u>Exhibit 4 </u>to Declaration of Ronald Wilcox in Support of Plaintiff's Motion to Compel Further Discovery.

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL FURTHER DISCOVERY: Page 12**

burdensome and harassing.  Defendant objects to the extent that the interrogatory calls for attorney client privileged communications, disclosure of attorney work product and disclosure of trade secrets or proprietary information.

**PLAINTIFF'S DISCUSSION RE: INTERROGATORY NO. 6**

Defendant asserts that even if itviolated the FDCPA, it is not liable because the violation was the result of a *bona fide* error. 15 U.S.C. 1692k(b)(2)(c).[8] Thus, plaintiff is entitled to discover the *"procedures reasonably adopted to avoid"* the violations alleged in the Complaint.  Plaintiff offered to stipulate that no such procedures exist.  Defendant did not accept this offer.  Defendant agreed to amend its response, but defendant has not provided anything further.  In *Kimbro v. I.C. Sys.*, 2002 U.S. Dist. LEXIS 14599  (D. Conn. 2000), the court compelled a debt collector to supplement its response to nearly identical interrogatories, based on the defendant's agreement with the plaintiff that it would do so.  Any privilege claims that Far West may assert are waived, since it cannot claim a *bona fide* error defense, and then refuse to provide discovery on the alleged procedures that allegedly insulate it from liability.  Defendant's objections are ineffective because they are so vague and general.  If defendant wants to assert a *bona fide* error defense, it must allow plaintiff to discover the procedures it maintains to avoid errors.

**INTERROGATORY NO. 8**

For each of the form letters depicted in Exhibits A and B state the name, address, title and job description of each person who drafted, authorized or approved the letter, and state the date and substance of each such action taken.

**RESPONSE TO INTERROGATORY NO. 8**

Defendant objects to the extent that it calls for information which is irrelevant and not likely to lead to the discovery of admissible evidence.  Defendant objects to this request on the grounds that it calls for disclosure of attorney work product and attorney client privilege.

---

8. 15 U.S.C. 1692(b)(2)(c) provides:

A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding **the maintenance of procedures** reasonably adopted to avoid any such error. (emphasis added.)

**PLAINTIFF'S DISCUSSION RE: INTERROGATORY NO. 8**

Plaintiff alleges the two collection letters she received from defendant violate federal and state law.  As mentioned earlier, defendant has claimed any violation of the FDCPA has resulted from a *bona fide* error.  Thus, defendant has placed in issue the maintenance of procedures to avoid any such error in regards to these form collection letters.  Plaintiff may wish to depose the individuals who drafted, authorized or approved the collection letters to explore the validity of defendant's *bona fide* error defense.  Therefore, plaintiff is entitled to discover the identities of the persons responsible for the letters.  If defendant received advice from a lawyer in drafting the letters, the lawyer's identity is not a confidential communication.  Even if it was, any privilege claim is waived, both because defendant is raising the *bona fide* error defense and because defendant has not provided a privilege log.

**IX. REQUESTS FOR PRODUCTION OF DOCUMENTS**

**REQUEST FOR PRODUCTION NO. 1**
All documents regarding the phone numbers, names, and addresses of persons in California who were sent communications in the form of, or similar to, Exhibits A and B, in an attempt to collect on a dishonored check, between July 27, 2000 and July 27, 2004.

**RESPONSE TO DEMAND NO. 1**
Objection.  Defendant objects to this request on the grounds that it calls for the disclosure of personal and private information including financial information about consumers in the state of California who are not parties to this action.  The identity of the alleged class members including their addresses, telephone numbers and amount of debts owed to creditors is protected by the individuals constitutional rights to privacy as well as state and federal laws including the FDCPA.  This lawsuit is necessarily limited to the one-year period prior to plaintiff filing the complaint.  No documents will be produced.

**PLAINTIFF'S DISCUSSION RE: REQUEST FOR PRODUCTION NO. 1**

Defendant's objections raise the same issues that are raised in connection with Interrogatory No. 1, and the same discussion applies.

**REQUEST FOR PRODUCTION NO. 2**
All contracts for the collection of dishonored checks in California.

**RESPONSE TO DEMAND NO. 2**

Defendant objects to this request on the grounds that it calls for information which is irrelevant and not reasonably calculated to lead to admissible evidence. As such it is overbroad and unduly burdensome and harassing. Further, this request is not narrowly tailored as required by the Court's case management order concerning discovery. No documents will be produced.

**PLAINTIFF'S DISCUSSION RE: REQUEST FOR PRODUCTION NO. 2**

The identities of creditors, and the substance of their agreements with defendant, are relevant to the subject matter of the lawsuit for several reasons. It will be important to develop and verify collection information to determine that the class information provided by defendant is complete and accurate. Plaintiff will crosscheck defendant's information with that of the creditors. For example, if defendant claims that he sought to collect on thirty accounts forwarded by Safeway, plaintiff will have the opportunity to contact Safeway to determine whether Safeway's records of accounts referred to Far West match Far West's records. Additionally, Ms. Palmer is alleging that defendant threatened to take actions that it could not take or was not authorized to take, in violation of 15 U.S.C § 1692e(5). The contracts will show whether defendant was authorized to file collection lawsuits or demand interest. In *Yancey v. Hooten*, 180 F.R.D. 203, 212 (D. Conn. 1998), the court compelled discovery of agreements between the debt collector and the creditor document, because the agreements might lead to the discovery of admissible evidence concerning the defendant's debt collection activities.

**REQUEST FOR PRODUCTION NO. 3**

All documents regarding monies recovered, above the face amount of a check, when collecting on dishonored checks in California.

**RESPONSE TO DEMAND NO. 3**

Defendants object to this request on the grounds that it is overbroad so as to be unduly burdensome and harassing. Further, the request is vague and ambiguous as to time and vague and ambiguous as to what documents, if any, plaintiff is attempting to discovery. Further, it calls for information which is irrelevant and not likely to lead to the discovery of admissible evidence. Further, this request is not narrowly tailored as required by the Court's case management order concerning discovery. No documents will be produced.

**PLAINTIFF'S DISCUSSION RE: REQUEST FOR PRODUCTION NO. 3**

Defendant, with annual revenues exceeding two million dollars, claims that it collected only $4,941.00 in interest on dishonored checks since July 27, 2003. Plaintiff is not required to rely on defendant's representation. Records showing the amounts that defendant collected in interest, that Judge Whyte has already found to be unlawful, are clearly relevant to the subject matter of the lawsuit. Defendant's computerized collection and/or accounting records undoubtedly contain the requested information. Defendant's objections that the request is overbroad, and that documents are not relevant, are frivolous.

**REQUEST FOR PRODUCTION NO. 4**

All documents identifying creditors on whose behalf Defendant sought to collect amounts above the face amount of a check.

**RESPONSE TO DEMAND NO. 4**

Defendant objects to this request on the grounds that it calls for information which is irrelevant and not reasonably calculated to lead to admissible evidence. As such it is overbroad and unduly burdensome and harassing. Further, this request is not narrowly tailored as required by the Court's case management order concerning discovery. No documents will be produced.

**PLAINTIFF'S DISCUSSION RE: REQUEST FOR PRODUCTION NO. 4**

This request raises the same issues raised in connection with Request for Production No. 2, *supra*, and the same discussion applies.

**REQUEST FOR PRODUCTION NO. 5**

All documents regarding creation, use and modification of letters used to collect dishonored checks in California.

**RESPONSE TO DEMAND NO. 5**

Defendant objects to this requests on the grounds that it calls for information which is irrelevant and not reasonably calculated to lead to admissible evidence. As such it is overbroad and unduly burdensome and harassing. Defendant objects on the grounds that this request calls for disclosure of attorney client privilege an attorney work product. Further, this request is not narrowly tailored as required by the Court's case management order concerning discovery. No documents will be produced.

1

**PLAINTIFF'S DISCUSSION RE: REQUEST FOR PRODUCTION NO. 5**

2

This request raises the same issues raised in connection with Interrogatory

3

8, *supra*, and thus the same analysis applies.

4

**REQUEST FOR PRODUCTION NO. 6**

5

All documents regarding the calculation of the net worth of Defendant.

6

**RESPONSE TO DEMAND NO. 6**

7

Defendant objects to this request to the extent that it calls for the improper

disclosure of private or privileged financial information.  Subject to and without waiving

8

these objections, defendant produces a copy of its financial balance sheet for the year

2004.  (Exhibit 6.)

9

**PLAINTIFF'S DISCUSSION RE: REQUEST FOR PRODUCTION NO. 6**

10

When a debt collector violates the FDCPA statutory damages are one of

the available remedies.  In a class action, statutory damages may be up to $1,000.00

11

paid to each named plaintiff, and up to 1% of the defendant's net worth paid to the class.[9]

12

Although defendant has made a statement of its net worth, and produced a mostly

13

illegible, unaudited balance sheet, it has not complied with this document production

14

request.  In *Lucas v. GC Services L.P.*, *supra*, 226 F.R.D. at 332,[10] when a defendant in

15

---

9. 15 U.S.C. § 1692k provides, in pertinent part:

16

(a) Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of--

17

(2)(A)   in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000;

18

(B)       in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and

19

\*                          \*                          \*

20

**Factors considered by court**
(b) In determining the amount of liability in any action under subsection (a), the court shall consider, among other relevant factors--

21

\*                          \*                          \*

22

(2)       in any class action under subsection (a)(2)(B) of this section, *the frequency and persistence of noncompliance by the debt collector*, the nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional.  15 U.S.C. § 1692k, *emphasis added*.

23

10.  Lexis and Westlaw carry two different versions of this case, both purporting to be the officially reported case.  The Westlaw version includes a "Clarifying Order", that is not included in the Lexis version. Plaintiff is attaching a copy of the Westlaw version to the Memorandum as Attachment A.

24

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL FURTHER DISCOVERY: Page 17**

an FDCPA case refused to provide any information other than a two-page balance sheet, the court compelled a further response, ordering:

> Specifically, the defendants are to provide an audited balance sheet for each defendant, an identification of each lawsuit in which the defendants have provided or produced financial statements or net worth information, an identification of each instance in which the defendants have provided their net worth to any government agency, and financial statements, annual reports, semiannual and quarterly financial statements, credit applications, and tax returns for the last three years.

In the present case, responsive documents would include profit and loss records, bank statements, the source records that the balance sheet is based upon, tax returns, credit applications and any other records showing defendant's financial condition.

Defendant's objections are easily disposed of. By producing the balance sheet, defendant waives any privilege. The privilege claims are also waived because defendant refuses to provide a privilege log. Finally, as discussed above, any legitimate financial privacy claims may be addressed by a protective order restricting dissemination of any truly private financial information. Responsive documents should be produced.

**REQUEST FOR PRODUCTION NO. 7**

All documents relating to the maintenance of procedures by Defendant to ensure compliance with and avoid violations alleged in the Complaint.

**RESPONSE TO DEMAND NO. 7**

Defendant objects to this request on the grounds that it is overly broad and therefore unduly burdensome and harassing. Further, the request is vague and ambiguous as to "ensuring compliance with and avoiding violations." As stated this request is unintelligible and unanswerable. Further, defendant objects to the extent it possibly calls for disclosure of work product, privileged, proprietary or trade secret information.

**PLAINTIFF'S DISCUSSION RE: REQUEST FOR PRODUCTION NO. 7**

This request is similar to Interrogatory No. 6, and the same analysis applies. Defendant's failure to provide a privilege log is an additional basis for finding that defendant has waived any privilege that could arguably apply.

**REQUEST FOR PRODUCTION NO. 8**

All documents regarding any litigation Defendant initiated in California in an attempt to collect a debt between July 27, 2003 and the present.

**RESPONSE TO DEMAND NO. 8**

Defendant objects to this request on the ground that it is overly broad and therefore unduly harassing and burdensome.  Further, this request calls for information which is not relevant or reasonably calculated to lead to admissible evidence.  Further, this request is not narrowly tailored as required by the Court's case management order concerning discovery.  No documents will be produced.

**REQUEST FOR PRODUCTION NO. 9**

All documents regarding any litigation Defendant initiated in California between July 2000 and the present.

**RESPONSE TO DEMAND NO. 9**

Defendant objects to this request on the grounds that it is overly broad and therefore unduly harassing and burdensome.  Further, this request calls for information which is not relevant or reasonably calculated to lead to admissible evidence.  This lawsuit is necessarily limited to the one-year period prior to plaintiff filing the complaint.  Further, this request is not narrowly tailored as required by the Court's case management order concerning discovery.  No documents will be produced.

**PLAINTIFF'S DISCUSSION RE: REQUEST FOR PRODUCTION NOS. 8 and 9**

These two document production requests are identical, except that the time period in Request No. 8 is narrower than the time period in Request No. 9.  These requests raise the same issues raised in connection with Interrogatory No. 5, and the same discussion applies.

///

///

///

1

**X.  CONCLUSION**

2

       The discovery that plaintiff seeks is directly related to the subject matter of

3

this lawsuit.  Defendant is engaged in a blatant game of delay, and has interposed an

4

amalgamation of objections that are meaningless and ineffective.

       WHEREFORE, plaintiff Susanne Palmer respectfully request that this

5

motion be granted.

6

7

DATED: April 18, 2005          LAW OFFICES OF PAUL ARONS

8

            By s/Paul Arons

9

              Paul Arons
              Attorneys for Plaintiff

10

              SUSANNE PALMER

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**Motions, Pleadings and Filings**

United States District Court,
N.D. Indiana,
Hammond Division.
Paul E. LUCAS, Sr. and Ruby M. Lucas,
Plaintiffs,
v.
GC SERVICES L.P.;  DLS Enterprises, Inc.;
and GC Financial Corporation,
Defendants.
**No. 2:03 CV 498.**

Nov. 3, 2004.
Order Clarifying Decision in Part Feb. 2,
2005.

**Background:**  Recipients of dunning letter
brought suit against debt collector, alleging
that it violated the Fair Debt Collection
Practices Act (FDCPA). Plaintiffs filed
motion to compel, and defendants filed
cross-motion to stay discovery.

 **Holding:**   The District Court, Rodovich,
United States Magistrate Judge, held that
defendant's egregiously evasive and
incomplete responses to discovery requests
warranted sanctions.
 Plaintiffs' motion granted; defendants'
motion denied.

West Headnotes

**[1] Federal Civil Procedure 1539**
170Ak1539 Most Cited Cases

**[1] Federal Civil Procedure 1637**
170Ak1637 Most Cited Cases

**[1] Federal Civil Procedure 1685**
170Ak1685 Most Cited Cases
Debt collector's egregiously evasive and
incomplete responses to discovery requests
in suit alleging that dunning form letter sent
to plaintiffs violated the Fair Debt
Collection Practices Act (FDCPA)
warranted sanctions of deemed admissions,
order compelling it to respond to
outstanding interrogatories and requests for
production within ten days, and payment of
plaintiffs' attorney fees related to motions to
compel. Consumer Credit Protection Act, §
802 et seq., as amended, 15 U.S.C.A. § 1692
et seq.; Fed.Rules Civ.Proc.Rule 37, 28
U.S.C.A.

**[2] Federal Civil Procedure 1537.1**
170Ak1537.1 Most Cited Cases
Debt collector's evasive and incomplete
response to interrogatory requiring it to state
the name, address, title, and job description
of each officer, director, and employee who
authorized, approved, or was aware of
dunning letters in the form sent to the
plaintiffs, warranted sanction; as defendant
failed to produce two of the three names it
provided in a timely fashion, and did not
produce any further names, it would be
precluded from presenting any other
witnesses in the case. Fed.Rules
Civ.Proc.Rule 37, 28 U.S.C.A.

**[3] Federal Civil Procedure 1636.1**
170Ak1636.1 Most Cited Cases
Where debt collector untimely produced
only one policy document in response to
requests for production of documents setting
forth its policies, procedures, or practices
related to the collection of debts and to
dunning letters such as those sent to
plaintiffs, and took the position that no
internal memoranda existed regarding its

**ATTACHMENT A- Lucas v. GC Services**

procedures for compliance with the Fair Debt Collection Practices Act (FDCPA), it would be precluded from using any internal memoranda related to compliance procedures, beyond the one policy document produced in the presentation of its case. Consumer Credit Protection Act, § 802 et seq., as amended, 15 U.S.C.A. § 1692 et seq.; Fed.Rules Civ.Proc.Rule 37, 28 U.S.C.A.

**[4] Federal Civil Procedure 1278**

170Ak1278 Most Cited Cases

Plaintiffs' motion to compel would not be denied for failure to timely file certification of compliance with local rule requiring good faith effort of parties to confer and resolve discovery disputes, where plaintiffs' motions reflected an effort to confer with defendants. U.S.Dist.Ct.Rules N.D.Ind., Rule 37.1(b).

 **\*328** Cathleen M. Combs, Daniel A. Edelman, James O. Latturner, Tara L. Goodwin, Edelman Combs & Latturner LLC, Chicago, IL, for Plaintiffs.

 David M. Schultz, Hinshaw and Culbertson, Chicago, IL, Renee J. Mortimer, Hinshaw and Culbertson, Schererville, IN, for Defendants.

*ORDER*

 RODOVICH, United States Magistrate Judge.

 This matter is before the court on the Renewed Motion to Compel filed by the **\*329** plaintiffs, Paul and Ruby Lucas, on September 22, 2004; the Cross-Motion to Stay Discovery filed by the defendants, GC Services, DLS Enterprises, and GC Financial Corporation, on October 5, 2004; the Motion to Add Supplemental Authority

to Motion to Dismiss filed by the defendants on September 17, 2004; the Motion to Add Supplemental Authority to Certain Motions Pending filed by the defendants on October 19, 2004; and the Motion for Leave to File Additional Authority in Support of Opposition to Dismiss and Opposition to Strike the Expert Opinion of Dr. Timothy Shanahan filed by the plaintiffs on October 25, 2004. For the reasons set forth below, the motion to compel is **GRANTED**, the motion to stay is **DENIED**, the motion to add supplemental authority filed on September 17, 2004 is **GRANTED**, the motion to add supplemental authority filed on October 19, 2004 is **DENIED**, and the motion to add additional authority filed on October 25, 2004 is **GRANTED**.

*Background*

 This discovery dispute arises from a suit filed by Paul and Ruby Lucas on November 19, 2003, alleging that a dunning letter sent to them by the defendant, GC Services, violated the Fair Debt Collection Practices Act ("FDCPA"). Defendants DLS Enterprises and GC Financial Corporation are the general partners of GC Services (collectively called "GCS").

 On January 30, 2004, the plaintiffs filed their first motion for Class Certification, which the plaintiffs renewed by permission of the court on August 20, 2004. On February 25, 2004, the plaintiffs served discovery on the defendants in the form of requests for admissions, interrogatories, and requests for production of documents. The majority of this discovery was relevant to the issue of class certification. On April 21, 2004, the defendants responded to the plaintiffs' discovery. These responses are the subject of the current motion to compel.

**ATTACHMENT A- Lucas v. GC Services**

On June 10, 2004, the plaintiffs filed their first motion to compel seeking to compel the defendants to answer their discovery more completely. On June 24, 2004, the defendants filed a crossmotion to compel because the plaintiffs did not sign their responses to the discovery propounded by the defendants. On August 6, 2004, this court denied both motions to compel without prejudice because neither party filed a certification pursuant to Local Rule 37.1.

On September 2, 2004, the defendants filed a motion to dismiss the plaintiffs' amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). On September 22, 2004, the plaintiffs renewed their June motion to compel because the defendants still had not corrected their deficient discovery responses. The renewed motion contained an affidavit from the plaintiffs' attorney, Alexander H. Burke, stating that the parties attempted to confer on September 20, 2004. Attorney Burke stated that the defendants' position was that the plaintiffs' original discovery was rendered moot by this court's Order of August 6, 2004, and that the plaintiffs must propound new discovery requests. Finally, on October 5, 2004, the defendants filed a motion to stay discovery until after the court ruled on the defendants' motion to dismiss. The discovery deadline for this case is January 31, 2005.

### Discussion

Federal Rule of Civil Procedure 37(a)(2)(A) states that "[i]f a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions," provided that the movant certifies that it first attempted to confer with the side not making disclosure. Rule 37(a)(3) states that "an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." Finally, Rule 37(c)(1) states that a party who fails to disclose, provides false or misleading disclosure, or refuses to admit information required by Rule 26(a) without "substantial justification" may be sanctioned unless such failure was "harmless." *See Musser v. Gentiva Health Services,* 356 F.3d 751, 755 (7th Cir.2004); *Salgado v. General Motors Corp.,* 150 F.3d 735, 742 (7th Cir.1998). The trial court has broad discretion to determine whether a violation is justified **\*330** or harmless. *See David v. Caterpillar, Inc.,* 324 F.3d 851, 857 (7th Cir.2003).

Under Rule 37(c), the trial court may impose sanctions which include the payment of attorney's fees, designating certain facts as established, preventing the disobedient party from supporting or opposing designated claims or defenses or "introducing designated matters in evidence," and striking pleadings. *See* Federal Rule of Civil Procedure 37(b)(2)(A)-(C); Federal Rule of Civil Procedure 37(c)(1). However, the sanctions chosen by the court must be such that "a reasonable jurist, apprised of all the circumstances, would have chosen as proportionate to the infraction." *Salgado,* 150 F.3d at 740; *In re Golant,* 239 F.3d 931, 937 (7th Cir.2001). Although the court "need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose," the court may consider the "bad faith or willfulness involved in not disclosing the evidence at an earlier date." *David,* 324 F.3d at 857.

**ATTACHMENT A- Lucas v. GC Services**

[1] In this instance, the GCS's discovery responses were egregiously evasive and incomplete. Within their responses to the plaintiffs' requests for admissions, GCS objected to Request No. 2 to admit the designation "867-01" was a "form number" because the term "form number" was vague and ambiguous. Despite the plaintiffs attaching photocopies of the letters GCS sent to the plaintiffs and inviting GCS to review the originals at its convenience, GCS denied Requests Nos. 3-8 to admit the number of persons to whom those form letters were sent on the grounds that the exhibits did not "accurately reflect the font print on the letters sent by GCS." GCS refused to answer Requests No. 9-11 regarding the "defendant's" net worth on the basis that the term "defendant" was vague and ambiguous, and then stated that it would be willing to provide this information if a class is certified.

Turning to the defendants' answers to interrogatories, the defendants stated that they could not determine who authorized, approved, or was aware of the form letter sent to the plaintiffs because it was developed over a substantial period of time. Defendants refused to describe the process by which GCS transmitted the letters on the grounds that the interrogatory was vague and overbroad and that the exhibits attached "are not originals and do not adequately represent the letters to the plaintiffs." Defendants refused to answer interrogatories directed at steps GCS takes to collect a debt or describing document destruction and retention policies because these requests were vague, overbroad, and not reasonably calculated to lead to discoverable evidence. GCS categorically refused to answer interrogatories regarding Indiana residents

who received the form letter at issue and the defendants' net worth on the grounds that this information is only relevant if a class is certified, and then further stated that because the photocopies of the letters did not "adequately represent the form letters sent by GCS, there are no people sent said letter."

Finally, with respect to the defendants' responses to requests for production of documents, the defendants claimed that virtually every document requested by the plaintiffs, from the technical specifications for paper, ink, and, manuals, and other memoranda setting forth instructions for compliance with the FDCA to pre-existing organizational charts for GCS, are protected by the attorney-client and work-product privileges. Defendants have refused to provide information regarding who, other than the defendants, printed or mailed the form letters on the same grounds.

In short, GCS has responded to the discovery propounded by the plaintiffs by providing no responses at all. Aside from numerous other illogical objections, defendants have taken the preposterous position that they do not have to answer much of the plaintiffs' discovery because the photocopies of the original letters are not "adequately representative" of the originals themselves, despite invitations by the plaintiffs to review the actual documents. Moreover, the defendants have cited the attorney-client and work-product privileges as a basis for refusing to provide information that so obviously falls outside these privileges that it does not merit discussion. Finally, the defendants have refused to respond to discovery largely on the grounds that it is only relevant in the

**ATTACHMENT A- Lucas v. GC Services**

event a **331** class is certified, even though the defendants did not file a motion to stay discovery on these grounds until after the plaintiffs filed their second motion to compel and over one month following the plaintiffs' motion to dismiss.

The defendants do not get to determine unilaterally the scope and timing of discovery. The plaintiffs filed their first motion for class certification on January 30, 2004, one month before propounding discovery regarding the class issues on the defendants. Yet the defendants did not raise the scope or relevancy of this discovery to the court in the six months preceding the defendants' June 24, 2004 response to the first motion to compel, in the response itself, or in the motion to dismiss filed by the defendants on September 2, 2004. Nevertheless, since April 21, 2004, the defendants have determined that they do not need to respond to the plaintiffs' discovery until after the court has ruled on the motion for class certification. While there may be merit in staying discovery of class issues pending a motion to dismiss, the defendants have lost this privilege by waiting until after their discovery responses were due to raise this issue.

In light of the blatant and willful bad faith the defendants have displayed throughout this discovery dispute, the court finds the defendants' conduct to be without substantial justification and harmful to the litigation of this case. Furthermore, the plaintiffs do not need to propound new discovery upon the defendants. The court denied the plaintiffs' first motion to compel on procedural grounds, not on the substantive merit of the plaintiffs' discovery.

For the foregoing reasons, the Renewed Motion to Compel filed by the plaintiffs, Paul and Ruby Lucas, on September 22, 2004 is **GRANTED**; the Cross-Motion to Stay Discovery filed by the defendants, GC Services, DLS Enterprises, and GC Financial Corporation, on October 5, 2004 is **DENIED**; the Motion to Add Supplemental Authority to Motion to Dismiss filed by the defendants on September 17, 2004 is **GRANTED**; the Motion to Add Supplemental Authority to Certain Motions Pending filed by the defendants on October 19, 2004 is **DENIED**; and the Motion for Leave to File Additional Authority in Support of Opposition to Dismiss and Opposition to Strike the Expert Opinion of Dr. Timothy Shanahan filed by the plaintiffs on October 25, 2004 is **GRANTED**. Pursuant to Federal Rule of Civil Procedure 37(c), the court further ORDERS the following sanctions against the defendants:
1) Requests for Admissions No. 1 and 2 are deemed admitted;
2) The defendants are deemed to admit that the photocopies of the letters sent to the plaintiffs, referenced as "Exhibits A-B" throughout the discovery, do accurately reflect the font print of the letters sent by GCS;
3) The defendants shall respond to all outstanding interrogatories and requests for production within ten (10) days of the date of this order; and
4) The defendants shall pay the plaintiffs' attorney's fees related to both the first motion to compel filed by the plaintiffs on June 10, 2004 and the renewed motion to compel filed by the plaintiffs on September 22, 2004. Counsel for the plaintiffs shall file an affidavit with the court attesting to fees incurred in litigating these motions by November 23, 2004.

**ATTACHMENT A- Lucas v. GC Services**

*CLARIFYING ORDER*

This matter is before the court on the Motion for Clarification of the Order of 11/03/04 filed by the defendants, GC Services, DLS Enterprises, and GC Financial Corporation, on December 10, 2004; the Motion for Rule to Show Cause filed by the plaintiffs, Paul and Ruby Lucas, on December 15, 2004; and the Motion to Deem Admitted Certain Facts Relating to Class Certification filed by the plaintiffs on December 15, 2004. For the reasons set forth below, the motion for clarification is **GRANTED IN PART** and **DENIED IN PART**, the motion for rule to show cause is **GRANTED IN PART** and **DENIED IN PART**, and the motion to deem facts admitted is **DENIED**.

**\*332** *Background*

Paul and Ruby Lucas allege that a dunning letter sent to them by the defendant, GC Services, on November 19, 2003, violated the Fair Debt Collection Practices Act ("FDCPA"). Defendants DLS Enterprises and GC Financial Corporation are the general partners of GC Services (collectively called "GCS").

This latest discovery dispute between the Lucases and GCS illustrates the continued inability of the parties to cooperate on discovery matters. On November 3,2004, this court ordered sanctions against the defendants for their grossly egregious conduct in responding to the plaintiffs' interrogatories and requests for production of documents. The various motions stem from that Order. The defendants seek to alter the language of one sanction and assert that they have complied with the Order in all other respects. The plaintiffs claim that the

defendants have not complied with the Order and seek further sanctions.

*Discussion*

Federal Rule of Civil Procedure 37(b)(2) states that "[i]f a party fails to obey an Order regarding discovery, 'the court may make such orders in regard to the failure as are just.' "

**Sanction # 2 in the Order of November 3, 2004**

In the November 3, 2004 Order, this court sanctioned the defendants by deeming them to admit "that the photocopies of the letters sent to the plaintiffs ... do accurately reflect the font print of the letters sent by GCS." The defendants object to this sanction on the grounds that the darkness of the font print is a critical issue in this litigation and that admitting this point would be admitting an "obvious falsehood" based on previous rulings by courts outside this jurisdiction. The defendants' argument centers around the exhibits being photocopies of the original letters, rather than the originals themselves.

Federal Rule of Civil Procedure 36 and Rule 37 contain no requirement that the facts deemed admitted be "true" in the eyes of other courts or the punished party, or that the facts admitted not be critical to that party's case. The effect of Rule 36 and Rule 37 sanction is simply that through its own improper conduct, a party can impede its case. GCS's original answers to the plaintiffs' discovery, which were the subject of this court's previous Order, were an attempt to subvert the discovery rules. GCS refused to answer any interrogatories regarding who was sent letters like those received by the Lucases because the photocopies attached to the discovery

**ATTACHMENT A- Lucas v. GC Services**

requests did not "accurately reflect the font print" of the original letters.  GCS claimed that "no persons" received the letters described by the photocopied attachments for this reason.  Taken in addition to GCS's more evasive responses to other discovery propounded by the Lucases, the court's sanction was appropriate.

 However, the plaintiffs raise no objection to a modification of the second sanction in the court's November 3, 2004 Order to state:
The defendants are deemed to admit that the photocopies of the letters sent to the plaintiffs, referenced as "Exhibits A-B" throughout the discovery, are *similar in form* to the letters sent by GCS.
 Accordingly, the court's Order of November 3, 2004 is so modified.

### Sanction # 3 in the Order of November 3, 2004

 The third sanction required the defendants to respond to all outstanding interrogatories and requests for production within ten days of November 3, 2004.  The defendants submitted their untimely response to the plaintiffs on November 18, 2004.  The defendants seek clarification of this sanction in that Request for Production # 23 requires the defendants to produce information in violation of the Fair Debt Collection Practices Act ("FDCPA") and the Gramm-Leach Bliley Act.

 Exceptions within the FDCPA may well apply to disclosure of consumer information in this case.  *See* 15 U.S.C. § 1692c(b) (allowing disclosure with "the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy").  In addition, the **333** Gramm-Leach Bliley

Act ("GLB") may be irrelevant to this litigation, as the plaintiffs' complaint is based solely in the FDCPA.  *See Blair v. Sherman Acquisition,* No. 04 C 4718, 2004 WL 2870080, at *4 (N.D.Ill.Dec.13, 2004). Even if the GLB were applicable, exceptions within the GLB may apply here.  *See* 15 U.S.C. §§ 6802(3)(B), (D) (allowing disclosure "to protect against or prevent actual or potential fraud, unauthorized transactions, claims, or other liability" or "to persons holding a legal or beneficial interest relating to the consumer").  In any event, the court expresses no opinion on this point, as the plaintiffs do not dispute the issue and do not challenge the sufficiency of GCS's response to Request # 23.  Therefore, the defendants' answer is sufficient at this time.

 However, the plaintiffs raise numerous objections to GCS's other responses to the propounded discovery.  First, the plaintiffs argue that the defendants wrongfully asserted six "general objections" in responding to the plaintiffs' discovery requests.  While GCS should not have included these objections in their discovery responses, the objections appear to be part of a boilerplate form erroneously included with the responses.  Therefore, the fact that these general objections are included with the answers is not evidence of bad faith on the part of the defendants.  In order to bring the defendants' responses into greater compliance with the November 3, 2004 Order, the court hereby strikes the six "general objections" enumerated A-F, from the defendants' responses.

 [2]  Next, the plaintiffs challenge the defendants' response to Interrogatory No. 1 on the grounds that it is evasive and incomplete. This interrogatory required GCS

**ATTACHMENT A- Lucas v. GC Services**

to state the name, address, title, and job description of each officer, director, and employee who authorized, approved, or was aware of letters in the form sent to the plaintiffs. In response, the defendants produced the name of Michael Sullivan, the manager of GC Services. On December 14, 2003, the defendants produced the names of former employee Diana Derbus with respect to Interrogatory No. 1 and GC Services CIO Michael Ellis with respect to knowledge of the computer systems at GC Services. As the defendant failed to produce the names of Derbus and Ellis in a timely fashion and has not produced any further names, the defendants may not present any other witnesses in this case. Furthermore, the defendants are directed to produce the title, job description, and last known addresses of Ellis and Sullivan. The defendants have stated that GCS does not have a last known address for Derbus. In the event such documentation is discovered, GCS shall notify the plaintiffs immediately.

The plaintiffs also object to the defendants' response to Interrogatory No. 10 on the grounds that GCS has not completely answered the question presented. The Lucases asked both whether Sam A. Marshall exists and also that if he does not exist, who answers calls placed to 800/679-6772. The defendants answered that Sam A. Marshall is a pseudonym and that "personal representatives" are available at the phone number. The defendants' answer is vague in that it fails to name the representatives. Consistent with the court's determination with respect to Interrogatory No. 1, the defendants may not produce any further witnesses beyond Ellis, Sullivan, and Derbus in their defense.

The Lucases object to GCS's response to Interrogatory No. 3 on the grounds that the response fails to indicate the name of the third party printer who prints the form letters. GCS untimely provided the name of this company, Relizon, on December 14, 2004. Although the interrogatory did not specifically require the address and phone number of this printing company, the defendants exhibit bad faith in failing to reveal even Relizon's name until one month after this court ordered the defendants' responses. Therefore, the defendants shall provide the plaintiffs with the names of the Relizon representatives that GCS works with, as well as the company's mailing address and phone number.

Interrogatories No. 6-7 essentially seek information regarding how debtor information is culled from the GCS databases. The plaintiffs object to GCS's answers to these interrogatories on the grounds that the defendants' computer search system is ineffective **334** in determining who belongs to a class for purposes of litigation. The plaintiffs further seek a court-ordered modification of the database to enable class information to be generated. These objections and requests go beyond the scope of discovery and are denied.

The plaintiffs' objection to GCS's response to Interrogatory No. 14 and Document Request No. 45 must also be rejected. The defendants do not need to explain, as the plaintiffs suggest, how the defendants keep current on the law. The defendants' approach to legal education is not a subject of litigation in this case.

Interrogatory No. 9 and Request No. 4

**ATTACHMENT A- Lucas v. GC Services**

sought to identify any "testing" and documents related to testing done on the defendants' collection letters. The defendants responded that no testing was performed and that the letters were subject to only informal visual review. The plaintiffs object to the defendants' failure to name the individuals who performed the "visual review" because the plaintiffs believe the visual review is part of the defendants' bona fide error defense. This court already has determined that the defendants may not introduce any witnesses beyond Derbus, Sullivan, and Ellis. Therefore, GCS may not introduce any other witnesses to testify to the fact of this visual review.

Interrogatories No. 11-13 and Document Requests 19 and 21 seek financial information regarding the defendants' net worth. In response, the defendants provided a two-page unaudited balance sheet for GC Services and cited case law for the proposition that no other information is relevant in FDCPA cases. *See Sanders v. Jackson,* 209 F.3d 998 (7th Cir.2000). On December 14, 2004, the defendants untimely provided an audited two-page balance sheet for GC Services. However, this court ordered the defendants to provide full and complete responses. The defendants have waived all legal defenses and must comply in full with the plaintiffs' requests. Specifically, the defendants are to provide an audited balance sheet for each defendant, an identification of each lawsuit in which the defendants have provided or produced financial statements or net worth information, an identification of each instance in which the defendants have provided their net worth to any government agency, and financial statements, annual

reports, semiannual and quarterly financial statements, credit applications, and tax returns for the last three years.

The plaintiffs argue that the defendants did not completely answer Request for Production No. 3, which requests all the technical specifications for paper, ink, and printing used to print the front and back of letters like those received by the Lucases. In particular, the plaintiffs seek the font weight of the print. In their response, the defendants state that the validation notices on the back of the letters are printed in "a degree of black ink." However, in their brief in opposition to the motion to show cause, the defendants explain that they have produced all information in their possession. As a practical matter, if the defendants intentionally print their letters in a degree of black ink, then a technical specification for that degree exists. The defendants are ordered to produce this information or direct the plaintiffs towards the person or entity responsible for establishing the technical specifications for font weight on their letters.

[3] The plaintiffs also assert that Requests No. 6-12 and 17 are "incomplete." These Requests seek manuals, memoranda, instructions, and other documents setting forth GCS's policies, procedures, or practices related to the collection of debts and to letters such as those sent to the Lucases, as well as information regarding claims and proceedings previously conducted against the defendants for violating the FDCPA. Although the defendants initially responded that GCS had no policies on the collection of debts, the defendants untimely produced a copy of the policy "Standard Operating Procedure C-9"

**ATTACHMENT A- Lucas v. GC Services**

on December 14, 2004. *See* Pl. Response to Motion to Clarify at p. 6. Document Requests No. 8-12 and 17 demand the production of information that the defendants claim is of public record. The defendants have waived this defense and are ordered to produce the information. Furthermore, the defendants have taken the position that no internal memoranda exists regarding Request**335** No. 17 for documents related to the maintenance of procedures GCS follows to avoid violations of the FDCPA. Therefore, the defendants may not use any internal memoranda related to compliance procedures, beyond the "Standard Operating Procedure C-9," in the presentation of their case. In the event the plaintiffs discover such procedures through other sources, the defendants shall be subject to further sanctions.

In response to Request No. 13, the defendants assert that GCS has no contracts with any entity to print or mail letters such as those sent to the Lucases. The plaintiffs assert that this claim is preposterous, in light of the size and activity of GCS. The defendants have been ordered to produce their contact information with Relizon. In the event the plaintiffs discovery such a contract through Relizon or other means, the defendants will be subject to further sanctions.

The plaintiffs object to the defendants' response to Request No. 15 on the grounds that it is evasive. The Request asks for "all organizational charts of the defendant." GCS admits that various interdepartmental documents exist, but they assert that there are no organizational charts for the company as a whole, beyond those registered with the Secretary of State's office. The request was for "all" charts. The defendants are ordered to produce the "interdepartmental documents," as well as a copy of the organizational information that is registered with the Secretary of State.

The plaintiffs raise the deficiency of the defendants' response to Interrogatory No. 22 for the first time in their reply brief in support of sanctions. Because the plaintiffs did not raise this argument initially, it is waived. *See Pugel v. Board of Trustees of the University of Illinois,* 378 F.3d 659, 669 (7th Cir.2004); *AT & T Wireless PCS, Inc. v. Town of Porter,* 203 F.Supp.2d 985, 989 (N.D.Ind.2002).

[4] Finally, the defendants argue that the plaintiffs' challenges to the compelled discovery responses must be denied because the plaintiffs failed to file a Local Rule 37.1(b) certification with their motions. Local Rule 37.1(b) states that "[w]ith respect to every other motion concerning discovery, the motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party in an effort to resolve the matter without court action." The plaintiffs' motion to show cause indicates that the "plaintiff's [sic] attorneys and GCS' attorneys held a meeting after the November 18, 2004, production to discuss the above issues plaintiffs had with the amended defenses." (Pl. Motion to Show Cause at p. 2) The motion to deem certain facts admitted also indicates that the parties have engaged in ongoing discovery discussions. The plaintiffs later untimely filed a certification on January 3, 2005, following the defendants' criticism of this procedural failure.

While the plaintiffs did not comply precisely with the Local Rule, the plaintiffs'

**ATTACHMENT A- Lucas v. GC Services**

motions reflect an effort to confer with the defendants. Moreover, the court already has dealt with the merits of the motions. Therefore, the plaintiffs' lack of compliance is not fatal.

**Motion to Deem Admitted Certain Facts**

In this motion, the plaintiffs seek a further discovery sanction against the defendants deeming numerosity admitted for purposes of class certification. The discovery sanctions chosen by the court must be such that "a reasonable jurist, apprised of all the circumstances, would have chosen as proportionate to the infraction." *Salgado v. General Motors Corp.*, 150 F.3d 735, 740 (7th Cir.1998); *In re Golant*, 239 F.3d 931, 937 (7th Cir.2001). The sanctions directed against GCS throughout this Order are commensurate with the specific deficiencies in the defendants' discovery responses. The merits of the plaintiffs' motion for class certification need not be a subject of further sanction.

For the foregoing reasons, the Motion for Clarification of the Order of 11/03/04 filed by the defendants, GC Services, DLS Enterprises, and GC Financial Corporation, on December 10, 2004 is **GRANTED IN PART** and **DENIED IN PART**, the Motion for Rule to Show Cause filed by the plaintiffs, Paul and Ruby Lucas, on December 15, 2004 is **GRANTED IN PART** and **DENIED IN PART**, and the Motion to Deem Admitted Certain Facts Relating to Class Certification **\*336** filed by the plaintiffs on December 15, 2004 is **DENIED**.

The court hereby **MODIFIES** the second sanction in the court's November 3, 2004 Order to state:

The defendants are deemed to admit that the photocopies of the letters sent to the plaintiffs, referenced as "Exhibits A-B" throughout the discovery, are similar in form to the letters sent by GCS.

The court **ORDERS** the following sanctions against the defendants:

1) the six "general objections," enumerated A-F, in the defendants' responses are **STRICKEN**;

2) the defendants may not present any witnesses in this case except Michael Ellis, Michael Sullivan, and Diana Derbus;

3) the defendants may not use any internal memoranda related to compliance procedures, beyond the "Standard Operating Procedure C-9," in the presentation of their case.

The court further **ORDERS** the defendants to produce the following information on or before February 14, 2005:

1) the title, job description, and last known addresses of Michael Ellis and Michael Sullivan. In the event the last known address of Diana Derbus is discovered, GCS **SHALL** notify the plaintiffs immediately;

2) the name or names of the Relizon representatives, if they exist, the defendants have or currently work with, as well as the company's mailing address and phone number;

3) the "interdepartmental documents" related to the organization of GCS, as well as a copy of the organizational information that is registered with the Secretary of State;

4) the technical specifications for the font weight on the letters sent to the plaintiffs, or the person or entity, if not employed by GCS, responsible for establishing these technical specifications;

5) full and complete responses to Document Requests No. 8-12, **WITHOUT** commentary on the number of times the

**ATTACHMENT A- Lucas v. GC Services**

plaintiffs' law firm has sued the defendants or on the merits of this case.

The court further **ORDERS** the defendants to produce the following information on or before February 25, 2005:

1) an audited balance sheet for each defendant;

2) an identification of each lawsuit in which the defendants have provided or produced financial statements or net worth information;

3) an identification of each instance in which the defendants have provided their net worth to any government agency;

4) financial statements for the last three years;

5) annual reports for the last three years;

6) semiannual and quarterly financial statements for the last three years;

7) credit applications for the last three years;

8) tax returns for the last three years.

The court further **ORDERS** each party to bear its own costs in the litigation of the motions before this court.

The defendants are **WARNED** that the defendants shall be subject to further sanctions in the event the plaintiffs discover:

1) manuals, memoranda, instructions or other documents setting forth GCS's policies, procedures, or practices related to the collection of debts or to form letters such as those sent to the plaintiffs, other than the "Standard Operating Procedure C-9"; or

2) a contract that GCS has with Relizon or another third party for the printing or mailing of form letters such as those sent to the plaintiffs.

226 F.R.D. 328

**Motions, Pleadings and Filings (Back to top)**

- [2:03CV00498](#)            (Docket) (Nov. 19, 2003)

END OF DOCUMENT

**ATTACHMENT A- Lucas v. GC Services**